## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DELORES MCGEE
d/b/a Emergent Preparatory Academy
3609 Bonhoeffer Drive
Bowie, MD 20721

*Plaintiff;*

v.

ERIE INSURANCE COMPANY
100 Erie Insurance Place
Erie, PA 16530

THE WARD MEMORIAL A.M.E.
CHURCH, BENNING D.C.
d/b/a Ward Memorial AME Church
241 42nd Street NE
Washington, DC 20019

AND DOES 1-10 inclusive,

*Defendants.*

Civil Action No. 1:17-cv-2614

### COMPLAINT

Plaintiff DELORES MCGEE ("McGee"), D/B/A EMERGENT PREPARATORY

ACADEMY ("Emergent"), (collectively "Plaintiffs") submits her complaint against ERIE

INSURANCE COMPANY ("Erie") and WARD MEMORIAL AFRICAN METHODIST

CHURCH ("Ward") (collectively "Defendants").

### INTRODUCTION

1.     This action arises from damages sustained by Plaintiffs from sewer flooding to

McGee's child development business. Ward is the landowner of the property. Erie is Emergent's

insurer responsible for providing policy coverage. The flooding was caused by a ruptured sewer

line that Ward knew created a foreseeable risk of harm to the property. Emergent suffered a

constructive eviction because of the flooding. Plaintiffs' claims arise from the Defendants' failure to satisfy their respective legal and contractual obligations. McGee asserts claims for declaratory relief, breach of contract, breach of the implied  covenant of good faith and fair dealing, negligence, gross negligence, and conversion.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over McGee's claims under 28 U.S.C. §§ 1332(a)(1), (c)(1)(B) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties.

3.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the Defendants' acts or omissions causing McGee's claims occurred in the District of Columbia.

## PARTIES

4.     McGee is, and at all times mentioned herein was, a sui juris adult resident of the state of Maryland residing at 3609 Bonhoeffer Drive, Bowie, MD 20721. McGee is the owner/administrator for Emergent.

5.     Emergent was a private child development facility in the District of Columbia with a principal place of business at 227 42nd Street NE, Washington, DC 20019.

6.     Erie is, and at all times mentioned herein was, a corporation formed and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 100 Erie Insurance Place, Erie, PA 16530. Erie has been licensed to issue personal and business insurance policies within the District of Columbia.

7.     Ward is, and at times mentioned herein was, a corporation formed and existing under the laws of the District of Columbia with a principal place of business at 241 42nd Street NE, Washington, DC 20019.

8.     DOES 1 through 10 are persons or entities whose true names and capacities are unknown to McGee, and who therefore are sued by such fictitious names. McGee is informed and believes, and thereon, alleges that each of the fictitiously named defendants perpetrated

some or all of the wrongful acts alleged, are responsible for the matters alleged, and are jointly and severally liable to McGee. McGee will seek leave of court to amend her complaint to state the true names and capacities of such fictitiously named defendants when ascertained.

## FACTUAL ALLEGATIONS

### McGee and Ward

9.      On June 19, 2012, McGee and Ward signed a five-year lease agreement ("Agreement") for Emergent to operate a daycare, school or educational facility at 227 42nd Street NE, Washington, DC 20019—located across the street from Ward (the "Premises").

10.      The Premises are owned by Ward.

11.      McGee paid Ward a $4,500 deposit and made timely rent payments of $4,000 per month.

12.      Under Section 19.4, the Agreement is governed by District of Columbia law.

13.      On May 9, 2017, the Premises were flooded due to tree roots that invaded and ruptured a sewer line. McGee immediately notified Ward by telephone of the sewer flooding. McGee also immediately contacted SERVPRO, a remediation services company, to inspect the damages. Later the same day, two representatives of Ward inspected the Premises.

14.      The sewer line was an appurtenance to the Premises not within the exclusive control of McGee.

15.      The next day, SERVPRO inspected the Premises and advised McGee that due to the damages caused by the sewage, the affected walls and floors had to be removed. McGee then notified Ward of SERVPRO's assessment, and requested authorization for SERVPRO to begin remediation services. Ward however refused to authorize services to be performed.

16.      Ward had prior, actual knowledge of the sewer line's dangerous condition because of numerous other sewage backups. In one instance, excavation of the Premises was required for installation of a sewer cleanout line for regular maintenance. Ward acted with gross negligence, recklessness, or willful misconduct by refusing to properly maintain and correct the cleanout line.

–3–

17.     The next day, May 10, 2017, the Office of the State Superintendent of Education ("OSSE") inspected the Premises and issued McGee an abatement order to immediately "cease and desist operation" until specified remediation services were performed, including air quality services. If remediation was not started within two days, the order required McGee to surrender her operating license.

18.     The next day, May 11, 2017, McGee paid $1,185 to Ruth Plumbing, as required by Erie, to assess and repair the sewer line and establish the cause the damaged sewer line.

19.     About a week later, Erie authorized, and paid, SERVPRO $2,500 to remove damaged items, but not perform remediation services, to the Premises. Erie represented to McGee those items would all be replaced. As of this date—over 6 months after the flooding—Erie has failed or refused pay for McGee's damages as required under the Policy.

20.     Section 6.1 of the Agreement required Ward to repair the Premises, within ninety days, if casualty occurs. Section 6.1 specifically states:

> **Destruction of Premises**: Subject to Section 6.2, if the Premises are damaged by fire or other casualty, Landlord shall restore the damage to the Premises to the same condition as existed on the Rent Commencement Date exclusive of any Alterations. Landlord shall commence the repair, restoration or rebuilding thereof within ninety (90) days after such damage (subject to delays in the adjustment of insurance) and shall substantially complete such restoration, repair or rebuilding of the Premises to the same condition as existed on the Rent Commencement Date (but excluding any Alterations) as promptly as practicable after the commencement thereof, subject to delays caused by events of Force Majeure or Tenant Delays. Landlord shall promptly and diligently seek adjustment of insurance proceeds after any casualty.

21.     Ward refused to make any repairs to the Premises. Ward falsely represented to McGee that repairing damages to the Premises was solely McGee's responsibility. Ward specifically told McGee that "you as a tenant will take full responsibility for the full cost of the repairs." Ward knew it never intended to comply with its obligations under Section 6.1 and

–4–

fraudulently induced McGee to detrimentally rely on Ward's representations in signing the Agreement. McGee would not have signed the Agreement if she knew Ward's representations were not true.

22.     Because the Premises were not remediated, OSEE forced McGee to surrender her business license. OSSE took McGee's license on May 19, 2017. Two days later, McGee repudiated the Agreement. As of May 30, 2017, no remediation services were performed by Erie or Ward.

23.     Section 5.1 of the Agreement only required McGee to maintain the interior of the premises, notwithstanding snow and ice on the walkways. Section 5.1 specifically states:

> **TENANT'S MAINTENANCE OBLIGATIONS:** Tenant shall make and pay for all maintenance, replacement alterations and repairs necessary to keep the interior of the Premises and all equipment that are purchased and/or installed by Tenant, and exclusively serving the Premises, in a good state of repair consistent with a building of similar age and character as the Building in the Metropolitan Area, in compliance with all Governmental Regulations and in tenantable, safe condition. The Tenant shall solely be responsible for snow and ice removal of the areas and walkways that reasonably touch and abut the Premises in a timely manner.

24.     Section 10.3 of the Agreement required Ward to use commercially reasonable efforts to mitigate damages to the Premises. Section 10.3 states in pertinent part:

> **REMEDIES CUMULATIVE:** Landlord and Tenant hereby waive any claim for lost profits, as well as claims for consequential damages, punitive or speculative damages. Landlord and Tenant hereby agree to use commercially reasonable efforts to mitigate any damages suffered in connection with this Lease.

25.     By refusing to repair, restore, and rebuild the Premises, Ward willfully or recklessly failed to mitigate damages, and actively interfered—in bad faith—with McGee's ability to mitigate her damages. Ward knew it never intended to comply with its obligations under Section 10.3 and fraudulently induced McGee to detrimentally rely on Ward's

misrepresentations in signing the Agreement. McGee would not have signed the Agreement if she knew Ward's representations were not true.

26.     McGee's damages were proximately caused by, and a foreseeable result of, Ward's failure to repair, restore, and rebuild the Premises.

27.     Under Section 12.2 of the Agreement, Ward was responsible for returning McGee's security deposit and rent. Section 12.2 specifically states:

> **SECURITY DEPOSIT**: The Landlord, mortgagee or purchaser shall be responsible for the return of any security deposit and rent voluntarily paid in advance by the Tenant on to (sic) the extent the security deposit or rent received by or credited to the Landlord, mortgagee or purchaser.

28.     On September 18, 2017—three months after vacating the Premises—McGee demanded from Ward, in writing, a pro-rated refund of the rent paid for May 2017, and her full $4,500 security deposit. Ward ignored McGee's demand letter. Ward knew it never intended to comply with its obligations under Section 12.2 and fraudulently induced McGee to detrimentally rely on Ward's misrepresentations in signing the Agreement. McGee would not have signed the Agreement if she knew Ward's representations were not true.

29.     Because of the flooding, McGee has sustained, and continues to sustain, business losses of $50,000 per month. As of this filing, McGee has suffered more than $300,000 in business losses because of the flooding.

30.     Because of the flooding, McGee has incurred, and continues to incur, monthly storage costs of $1,316.

31.     As of this filing, Ward continues its unfounded refusal to return McGee's security deposit. Ward's wrongful withholding is motivated by bad faith, dishonesty, and unreasonable self-serving purposes. Ward's wrongful withholding is not a result of negligence, bad judgment, or an honest but mistaken belief.

**McGee and Erie**

32.     As required by Section 4.1(1) of the Agreement, McGee maintained a $2,000,000 aggregate general liability insurance policy (the "Policy") with Erie. The Policy included $1,000,000 in coverage for "Damage to Premises" and "Business Personal Property", $10,000 for "Sewer and Drain Back-up" damages, and $50,000 in "Income Protection."

33.     The coverage period under the Policy is January 28, 2017 through January 28, 2018. McGee has paid all premiums on the Policy and satisfied all conditions of coverage. During all relevant periods, the Policy was valid and enforceable. All actions taken by McGee were reasonable, and no action by McGee has prevented Eric from fulfilling its contractual obligations.

34.     McGee filed a proof of loss with Erie (No. 010211056186) on June 22, 2017. After repeated demands, Erie paid McGee's partial claim. Erie paid McGee $44,000 for personal property damages and $50,000 for business losses.

35.     Erie refused to provide coverage for all damages caused by the flooding. Erie told McGee that, despite the Policy terms, Ward was responsible for repairing the Premises.

36.     Despite repeated demands, Erie did not, and has not, honored the terms of the Policy to insure McGee. Erie has vexatiously, wantonly, and oppressively refused to provide complete coverage for McGee's personal property damages.

37.     Because of the flooding, McGee sustained personal property damages of more than $200,000.

38.     Because of the Defendants' conduct, McGee has suffered severe anger, annoyance, depression, sleeplessness, anxiety, emotional distress, and undue inconvenience.

39.     Because of the Defendants' conduct, McGee has sustained substantial damages, including but not limited to, business revenue, lost profits, storage costs, attorney's fees, costs of suit, and other out-of-pocket expenses.

40.     The Defendants' bad faith conduct is intentional, malicious, and in open defiance of their contractual and legal obligations.

# FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

## (AS TO ALL DEFENDANTS)

41.     Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1-40, inclusive, above, as if fully set forth herein.

42.     The terms of the Agreement required Ward to use commercially reasonable efforts to mitigate any damages.

43.     Ward breached the terms of the Agreement by: (1) refusing to mitigate damage to the Premises in a commercially reasonable manner after the flooding; (2) refusing to repair, restore, or rebuild the Premises; and (3) falsely requiring that "[McGee] as a tenant will take full responsibility for the full cost of the repairs."

44.     Ward further breached the Agreement by refusing to issue a pro-rated refund of McGee's May 2017 rent payment, and her full security deposit.

45.     Because of Ward's breach of the Agreement, McGee has suffered damages including general and special damages, and attorney's fees and costs of suit.

46.     The terms of the Policy require Erie to insure McGee for real and personal property damage to the Premises, including sewer and drain damages.

47.     Erie breached the terms of the Policy by refusing to provide full benefits to McGee for damages covered by the Policy.

48.     Because of Erie's breach of the Policy, McGee has been deprived of Policy benefits, for which she paid substantial premiums, and suffered general and special damages, and attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (AS TO ALL DEFENDANTS)

49.     Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-48, inclusive, above, as if fully set forth herein.

50.     Implied in the Policy and Agreement are covenants that the Defendants will act in good faith and deal fairly with McGee; that they will do nothing to interfere with McGee's rights to under the Policy and Agreement; that they will not place their own interests before those of McGee; that Defendants will exercise diligence, good faith, and fidelity in safeguarding the interests of McGee; and that they will deal ethically with McGee.

51.     Ward breached its implied duties and violated the standards of decency, fairness, and reasonableness by willfully including unlawful waiver provisions in the Agreement to evade its responsibilities for repairing, restoring, and rebuilding the Premises after the flooding.

52.     Ward also breached its implied duties and violated the standards of decency, fairness, and reasonableness by requiring McGee to repair, restore, and rebuild the Premises after the flooding.

53.     Ward further breached its implied duties and violated the standards of decency, fairness, and reasonableness by refusing—in bad faith and unreasonable self-serving purposes— to refund McGee's pro-rated rent payment for May 2017 and her full $4,500 security deposit.

54.     Erie breached the implied covenant of good faith and fair dealing by :

    a.   Refusing to fully pay for covered damages;

    b.   Interpreting the terms of the Policy in an unreasonable manner, wholly inconsistent with applicable law, to avoid providing McGee with coverage to which she is entitled under the Policy;

   c.   Refusing to acknowledge coverage, or withdraw or alter their denials of coverage, notwithstanding their inability to identify supporting legal or factual authority for their coverage decisions;

   d.   Inventing spurious grounds to avoid coverage without regard to the policy language, facts, and law;

   e.   Failing to provide a prompt, reasonable explanation of the basis relied on, in relation to the facts or applicable law, for the denial of coverage;

   f.   Not attempting in good faith to negotiate a prompt, fair, and reasonable settlement within policy limits of McGee's claims;

   g.   Forcing McGee to file this litigation to obtain the rights and benefits to which she is entitled under the Policy.

55.    Erie breached of the implied covenant of good faith and fair dealing, did the things and committed the wrongful acts alleged above for the purpose of willfully and consciously withholding from McGee the rights and benefits to which she is entitled under the Policy and in complete disregard of said rights; Erie has placed their own interests above those of McGee to retain and use money that should have been spent on the damages sustained by McGee.

56.    Defendants' wrongful conduct was done with a conscious disregard of McGee's rights and intending to vex, injure, or annoy McGee by oppression, fraud or malice entitling McGee to an award of punitive damages in an amount to punish or set an example of the Defendants.

57.    Because of the Defendants conduct, McGee has suffered, and continues to suffer, consequential, incidental, and other damages, including attorney's fees and costs of suit.

## THIRD CLAIM FOR RELIEF

## GROSS NEGLIGENCE

## (AS TO DEFENDANT WARD)

58.     Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1-57, inclusive, above, as if fully set forth herein.

59.     Ward's acts and omissions are grossly negligent because Ward knew of the dangerous sewer line, and the risk of harm posed to McGee, but willfully or recklessly refused to maintain, repair, and restore the Premises.

60.     Ward's refusal to maintain, repair, and restore the Premises evidences an extreme departure from the ordinary standard of care by willfully or recklessly disregarding its legal and contractual obligations, and requiring that McGee "as a tenant will take full responsibility for the full cost of the repairs."

61.     The sewer line was in the exclusive control of Ward, and McGee's voluntary actions did not cause or contribute to the flooding.

62.     Because of Ward's grossly negligent conduct, McGee suffered substantial damages.

63.     McGee could have mitigated McGee's damages if Ward made reasonably efforts to maintain, repair, and restore the Premises.

## FOURTH CLAIM FOR RELIEF

## CONVERSION

## (AS TO DEFENDANT WARD)

64.     Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1-63, inclusive, above, as if fully set forth herein.

65.     Ward's willful refusal to refund McGee's pro-rated rent payment and full security deposit constitutes a distinct act of ownership, dominion and control over McGee's property in

–11–

derogation of her rights. Ward's refusal to refund McGee's pro-rated rent payment and full security deposit is malicious or in reckless disregard for McGee's property rights.

66.     Ward's willful refusal to refund McGee's pro-rated rent payment and full security deposit constitutes a distinct act of ownership, dominion and control over McGee's property in derogation of her rights. Ward's refusal to refund McGee's pro-rated rent payment and full security deposit is malicious or in reckless disregard for McGee's property rights.

67.     Ward's refusal to refund McGee's pro-rated rent payment and full security deposit caused McGee to suffer damages for loss of value, use, and possession of her property.

**FIFTH CLAIM FOR RELIEF**

**VIOLATIONS OF DCMR 14-308 ET SEQ.**

**(AS TO DEFENDANT WARD)**

68.     Plaintiffs repeat, re-allege, and incorporate by reference paragraphs 1-67, inclusive, above, as if fully set forth herein.

69.     Ward violated DCMR 14-309.1(1) by refusing to refund McGee's security deposit, plus interest, within forty-five days after terminating the tenancy.

70.     Ward violated DCMR 14-309.1(2) by refusing to notify McGee of its intent to withhold any portion of her security deposit.

71.     Ward violated DCMR 14-309.2 by refusing to provide McGee an itemized statement of repairs to be withheld from her $4,500 security deposit.

72.     Ward's failure to comply with DCMR 14-309.1-2 is prima facie evidence that McGee is entitled to a full refund of her security deposit, plus interest, under DCMR 14-309.3.

73.     Because Ward's wrongful withholding is motivated by bad faith, dishonesty, and unreasonable self-serving purposes, McGee is entitled to treble damages under DCMR 14-309.5.

–12–

## PRAYER FOR RELIEF

McGee respectfully prays that judgment be entered against the Defendants, and each of them, for:

A.      Compensatory and general damages;

B.      Special and incidental damages;

C.      Punitive damages;

D.      Costs of suit and reasonable attorney's fees; and

E.      For such other and further relief as the court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

DATED:  December 7, 2017                    Respectfully submitted,

*Dean Gregory*

Dean Gregory (Bar No. 1008846)
**LAW OFFICES OF DEAN GREGORY**
1717 K Street NW
Suite 900
Washington, DC 20006
Telephone: (202) 905-8058
Facsimile: (202) 776-0136
E-mail: dean@deangregory.com

*ATTORNEY FOR DELORES MCGEE*